COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia

WILLIAM ANTHONY SMITH

MEMORANDUM OPINION* BY
v.      Record No. 0038-17-1      JUDGE RICHARD Y. ATLEE, JR.
DECEMBER 12, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


In August 2014, appellant William Anthony Smith pled guilty to possession of child

pornography. A judge of the Circuit Court of the City of Norfolk ("trial court") accepted

Smith's plea and sentenced him to five years in prison, suspending all five years provided he

complied with the terms of supervised probation. In June 2015, the trial court revoked Smith's

suspended sentence and re-suspended four years and nine months. In October 2016, Smith's

probation officer filed a major violation report, and, after hearing evidence, the trial court

revoked the balance of Smith's suspended sentence and re-suspended two years. That most

recent revocation is at issue here. On appeal, Smith argues that the trial court (1) improperly

admitted evidence where the source of that evidence did not testify, and (2) erred by finding he

had violated terms of probation imposed by the probation officer, not the trial court, and that this

amounted to an improper delegation of judicial discretion.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

# I. BACKGROUND

Smith's initial sentencing order conditioned his suspended sentence on his adherence to the terms of his supervised probation. The June 2015 order added that Smith "shall comply with all the rules and requirements set by the Probation Officer," and "shall comply with all terms and conditions of his probation previously imposed."

In March 2016, Probation Officer Newton took over supervising Smith. In April 2016, Smith signed a document that enumerated "special instructions" for sex offenders. In October 2016, Newton filed a major violation report alleging that Smith had violated both the special instructions and general conditions of his probation. Smith admitted that he traveled outside his designated travel area without permission, stayed overnight in a hotel, consumed alcohol, tested positive for marijuana, and viewed "X-rated material," all of which were violations of the special instructions Smith had previously signed and agreed to follow.

Newton was the only witness at the revocation hearing. He testified that Smith had, without permission, traveled to South Carolina, North Carolina, and Richmond. He explained that he examined Smith's cell phone (pursuant to a condition in the special instructions) and noted that the browser history had been deleted. The browser was open to a site containing "sexual stories," but no images. Newton submitted Smith's phone for forensic analysis, conducted by Detective Beason of the Norfolk Police Department. According to Newton, the search recovered over six-hundred photos from the phone's cache and SD memory card, "most of which are pornographic in nature," and many of which involved children. He submitted these photos as an addendum to his major violation report. Smith objected to the admission of the addendum, as Newton did not personally conduct the forensic analysis, and Beason was not present to testify.

## II. ANALYSIS

### A. *Confrontation*

Smith argues that the trial court should not have admitted the addendum of photos obtained from Smith's phone into evidence, as the officer who personally conducted the analysis was not present to testify. In a probation revocation proceeding, a probationer has a limited due process right to confrontation, and testimonial hearsay "may be admitted only when 'the hearing officer specifically finds good cause for not allowing confrontation.'" Henderson v. Commonwealth, 285 Va. 318, 326, 736 S.E.2d 901, 905 (2013). A trial court may find good cause under either of two tests. Saunders v. Commonwealth, 62 Va. App. 793, 808, 753 S.E.2d 602, 609 (2014). "The first, the 'reliability test,' permits admission of testimonial hearsay in revocation proceedings if it possesses substantial guarantees of trustworthiness." Id. (quoting Henderson, 285 Va. at 327, 736 S.E.2d at 906). "The second test, the 'balancing test,' requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation." Henderson, 285 Va. at 327-28, 736 S.E.2d at 906.

"The two tests are overlapping and are not mutually exclusive." Id. at 328, 736 S.E.2d at 906. A judge may apply whichever test is most appropriate under the circumstances. Saunders, 62 Va. App. at 809, 753 S.E.2d at 610. When evidence is sufficiently reliable, it may not be necessary to conduct the "balancing" test. Henderson, 285 Va. at 328, 736 S.E.2d at 906-07. Generally, a judge "should state for the record the specific grounds upon which the court has relied for 'not allowing confrontation' in order to facilitate effective appellate review of that decision." Id. at 326-27, 736 S.E.2d at 906 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). However, the failure to do so is not necessarily reversible error. Id.; cf. Cox v. Commonwealth, 65 Va. App. 506, 520, 779 S.E.2d 199, 205-06 (2015) (finding error when the

trial court expressly stated reasons for finding good cause and admitting testimonial evidence that revealed it did not consider either reliability or a balancing of the parties' interests, and there was no "basis shown in the record for an implied finding" of reliability).

Here, although the trial court judge failed to expressly enumerate the reasons she found the evidence in the addendum reliable, it is evident from the record that she questioned and weighed the reliability of the evidence, and Newton's ability to testify to it, before admitting it. When Smith objected to testimony about the addendum's contents on confrontation grounds, the judge initially sustained his objection. Then, she (and counsel) asked questions of Newton. Newton explained that he "took the phone to Detective Beason and he plugged it into his machine. He pulled all the information off and then placed it onto CD's for me. Then I took the CD's back to my office, put it my computer and went through the material." The trial court asked if Newton was present while Beason conducted this analysis. Newton replied he was not there the "entire time," prompting the judge to ask: "When you say 'not the entire time,' did you give him any other phone to do that with?" Newton replied: "No, ma'am. I gave him the phone that I have with me right now." The judge then overruled the objection and admitted the evidence.

The record clearly shows that the trial court judge conducted a meaningful inquiry into the reliability of the evidence and that she ultimately concluded it was sufficiently reliable to overcome Smith's limited right to confrontation. Furthermore, the evidence supports her finding good cause for denying confrontation on those grounds. Nothing in the record suggests that the device used to retrieve these photos was faulty. Nor is there any reason to believe that the photos in the addendum did not, in fact, come from Smith's phone. Even if Newton was not present for the duration of the analysis, he personally took the phone from Smith and gave it to Beason for analysis. Newton watched Beason plug it into the machine that accessed the phone's contents.

Shortly thereafter, Beason gave Newton CDs containing the contents of the phone. Newton did not give Beason any other phone to analyze. Furthermore, "numerous pictures" of Smith were found on the phone (that were accordingly also in the addendum). Newton was able to explain the contents of the addendum, including the distinction between photos from the cache and photos stored on the device, and how to identify what images came from what location. Finally, Newton personally observed the images stored on the phone. For these reasons, the trial court did not err in admitting the addendum and allowing Newton to testify as to its contents.

B. *Delegation of Probation Conditions*

Smith also argues that the trial court, by ordering him to "comply with all the rules and requirements set by the Probation Officer," granted the probation officer impermissibly broad authority to establish conditions of probation. Therefore, Smith claims the trial court erred by revoking his suspended sentence for any "violation" of the special instructions. When reviewing probation revocation proceedings on appeal, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" Zebbs v. Commonwealth, 66 Va. App. 368, 373, 785 S.E.2d 493, 495 (2016) (quoting Green v. Commonwealth, 65 Va. App. 524, 532, 779 S.E.2d 207, 211 (2015)).

A court "may place the defendant on probation under such conditions as the court shall determine," Code § 19.2-303, and "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court," Code § 19.2-306. A trial court has broad discretion to impose conditions of a suspended sentence — the sole limitation is that they "must be reasonable, having due regard to the nature of the offense, the background of the offender and the surrounding circumstances." Nuckoles v. Commonwealth, 12 Va. App. 1083, 1086, 407 S.E.2d 355, 356

(1991) (quoting <u>Loving v. Commonwealth</u>, 206 Va. 924, 930, 147 S.E.2d 78, 83 (1966), <u>rev'd</u> <u>on</u>

<u>other</u> <u>grounds</u> <u>sub</u> <u>nom.</u> <u>Loving v. Virginia</u>, 388 U.S. 1 (1967)).

Here, after Smith's first probation violation, the trial court included additional language

in the sentencing order requiring him to "comply with all the rules and requirements set by the

Probation Officer." This condition is reasonable for a number of reasons. First, as a practical

matter, a trial court must be free to delegate some discretion to probation officers, as circuit court

dockets would be overwhelmed if every alteration to a probationer's special instructions required

prior approval by a judge. Furthermore, probation officers are strategically positioned to

determine what requirements and restrictions will most effectively accomplish probation's

rehabilitative goals. <u>See</u> <u>Miller v. Commonwealth</u>, 25 Va. App. 727, 745, 492 S.E.2d 482, 491

(1997) (A probation officer is "statutorily required to supervise, assist, and provide a probationer

with a statement of the conditions of his release from confinement," and is "charged by law with

defining a probationer's permissible or impermissible conduct."). Probation officers are likely to

be more familiar with a probationer's history and circumstances. They meet and work closely

with probationers, putting them in a better position than many judges to observe and adjust the

requirements and restrictions as needed. Permitting a probation officer to establish and amend

these terms of probation also provides flexibility, ensuring they are more precisely and

appropriately tailored to the probationer. Such an arrangement also eliminates the delay inherent

in waiting for a hearing date and a judge's approval. Finally, and crucially, the trial court does

not actually cede control over the conditions of probation to the probation officer. At any point,

if a probation officer files a major violation report, the judge retains the ability to determine if the

special instructions at issue are reasonable and merit enforcement. This safety valve ensures that

the trial court, rather than the probation officer, ultimately controls what constitutes a probation

violation. <u>See generally</u> Code § 19.2-304 (empowering trial courts to revoke or modify any

condition of probation); Reinke v. Commonwealth, 51 Va. App. 357, 367-68, 657 S.E.2d 805, 810-11 (2008) (noting that the court may alter the conditions of suspension or probation after revoking and re-suspending a sentence following a violation).

Smith does not contest that he violated the special instructions by traveling outside his designated travel area without permission, staying overnight in a hotel, consuming alcohol and marijuana, and viewing pornography. He admits that he signed and agreed to adhere to the special instructions that prohibit this conduct. He also acknowledges that his sentencing order requires him to "comply with all the rules and requirements set by the Probation Officer." There is no *de facto* error in a circuit court delegating to supervising probation officers the ability to establish rules of probation,[1] and here, the trial court's decision to do so was "reasonable, having due regard to the nature of the offense, the background of the offender and the surrounding circumstances." Nuckoles, 12 Va. App. at 1086, 407 S.E.2d at 356. Furthermore, the trial court did not err in finding the special instructions were reasonable and warranted enforcement: they were tailored to sex offenders, Smith's underlying conviction was for possession of child pornography, and one of his violations was possessing and viewing pornography. Accordingly, there was no error in the trial court finding Smith violated the terms of his probation and revoking his suspended sentence.

---

[1] There are some limits to what a circuit court may delegate. In Wilson v. Commonwealth, 67 Va. App. 82, 793 S.E.2d 15 (2016), the trial court expressly ordered that the probation officer would establish the amount of restitution to be paid. This Court found that was error because "[t]he amount of restitution to be paid by the defendant is within the sole province of the circuit court to determine and that determination may not be delegated to another department of government," id. at 89, 793 S.E.2d at 18 (citing Code § 19.2-305.1(D)), but ultimately concluded that Wilson's failure to challenge that part of his sentencing order within twenty-one days of entry meant it was an improper collateral attack on that prior conviction, id. Unlike the issue of restitution in Wilson, the Code does not expressly mandate that the trial court set the terms of probation violated here, or prohibit empowering a probation officer to do so.

### III. Conclusion

The trial court did not err in admitting the addendum evidence over Smith's objection, or in finding that Smith, by failing to follow the special instructions for sex offenders, violated the conditions of his probation.

<u>Affirmed.</u>